IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| INDUSTRIAL PRINT TECHNOLOGIES LLC, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO. 2:14-cv-00019 |
| CANON U.S.A., INC., and CANON SOLUTIONS AMERICA, INC., | § § § § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Canon U.S.A., Inc., ("C-USA") and Canon Solutions America, Inc.'s ("CSA") (collectively, the "Canon entities") Motion to Transfer Venue (Dkt. No. 36). The Plaintiff, Industrial Print Technologies LLC ("IPT"), opposes the Motion. For the reasons set forth below, the Canon entities' Motion to Transfer Venue is **GRANTED**.

## BACKGROUND

Industrial Print Technologies is a corporation organized and existing under the laws of the State of Texas. Dkt. No. 23 at ¶ 1 (Pl.'s Am. Compl.). IPT owns the rights to U.S. Patent No. 6,027,195 ("the '195 patent"), U.S. Patent No. 6,145,946 ("the '946 patent"), and U.S. Patent No. 6,493,106 ("the '106 patent"), which are all involved in this litigation. Dkt. No. 23 at ¶ 1. The inventor of the patents, Forrest Gauthier, assigned the rights to the patents to Tesseron, Ltd ("Tesseron"). Dkt. No. 23 at ¶ 11. Tesseron then exclusively assigned all rights in all three patents to IPT. *Id.*

The Canon entities are both New York corporations. Dkt. No. 36 (Def. Mot. Transfer

Venue) Ex. 8 ¶¶ 2–3 (Decl. of Guy Broadhurst). CSA is a subsidiary of C-USA, which in turn is a wholly owned subsidiary of Canon, Inc.—a Japanese corporation that is not a party to this lawsuit. Dkt. No. 36 Ex. 3 ¶ 6.

The central issue regarding this transfer motion is a patent license agreement (the "License Agreement") entered into between Canon, Inc. and Tesseron, Ltd. The License Agreement by its express terms extended benefits to Canon, Inc. and its "affiliates." Dkt. No. 36 Ex. 1 § 1.01 (License Agreement, or "L.A." in citations). The Canon entities assert, and IPT does not deny, that C-USA qualifies as a Canon affiliate. *See* Dkt. No. 39 at 2 n.1 (Pl.'s Opp'n to Mot. to Transfer). The License Agreement prohibits further sublicensing. L.A. § 2.02. While CSA does not appear to be directly licensed under the License Agreement, it instead claims the defense of patent exhaustion.

The parties also dispute whether the License Agreement binds IPT, as IPT was not a signatory to the contract. IPT admits, however, that Tesseron is IPT's "predecessor in interest." Dkt. No. 39 at 4.

The License Agreement is the focus of this motion because it contains an express forum-selection clause in favor of the Southern District of New York. L.A. § 8.12.

**DISCUSSION**

The Canon entities filed their motion to transfer venue asserting the existence and controlling effect of the forum-selection clause. The validity and applicability of that forum-selection clause is disputed. Accordingly, the Court must first answer a series of threshold questions regarding the validity and applicability of the forum-selection clause. If those threshold questions are resolved in favor of applying the forum-selection clause, the Court will turn to the § 1404(a) analysis outlined in *Atlantic Marine Construction Co., Inc. v. U.S. District Court for the*

*Western District of Texas*, 134 S. Ct. 568 (2013). If those threshold questions are resolved in favor of not applying the forum-selection clause, the Court will conduct a traditional § 1404(a) analysis.

**A. Threshold Questions Concerning the Applicability of the Forum-Selection Clause**

*i.  Applicable law*

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013). "[A] valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Id.* Further, the Supreme Court has outlined the analysis which a district court should undertake to determine whether or not a case is exceptional. *Id.* However, this "analysis presupposes a contractually valid forum-selection clause." *Id.* at 581 n.5. By extension, the *Atlantic Marine* analysis also presupposes a valid contract and a dispute that unquestionably falls within the scope of that contract. *See id*; *see also Stinger v. Chase Bank, USA, NA*, 265 F. App'x 224, 226–27 (5th Cir. 2008) (determining whether an arbitration clause is contractually valid by first determining (1) whether there is a valid agreement and (2) whether the dispute in question falls within the scope of that agreement); *Brown v. Federated Capital Corp.*, 991 F. Supp. 2d 857, 860 (S.D. Tex. 2014) ("The Court must first determine whether a contractually valid forum-selection clause exists that applies to the present case, which involves two separate inquiries: (1) whether the parties agreed to a contractually valid forum-selection clause, and (2) whether the present case falls within the scope of the forum-selection clause."). Finally, this analysis also presupposes that the forum-selection clause has not been waived by the party later asserting it. *GP Plastics Corp. v. Interboro*

*Packaging Corp.*, 108 F. App'x 832, 836–37 (5th Cir. 2004) (concluding that the district court did not err by conducting a waiver analysis before deciding whether a forum-selection clause applied).

### ii. *Discussion*

In the present case, IPT contends (a) that the forum-selection clause has been waived, (b) the License Agreement does not apply to the facts of the case (i.e., the facts of the case fall outside the scope of the License Agreement), (c) the License Agreement is invalid as applied to IPT, and (d) the forum-selection clause is invalid in a general sense. Given the present guidance of the U.S. Supreme Court, this Court will construe the License Agreement at issue in order to assess the validity and applicability of the License Agreement to the facts. After deciding the above threshold questions, the Court realizes that it may then be compelled to transfer the case (per the forum-selection clause) to a forum that will then have to re-construe the License Agreement to determine the merits and outcome of the case.[1] Although this process seems to generate judicial inefficiency, the Court must nevertheless decide these threshold questions and then apply the rubric set forth in *Atlantic Marine*. Consequently, these threshold questions must be answered on a case-by-case basis and through an intense, if somewhat premature, factual inquiry.

### a. *Waiver of the forum-selection clause*

IPT argues that the Canon entities waived the forum-selection clause under either New York or Texas law.[2] In support of IPT's argument, IPT cites to *American International Group*

---

1 The Court can foresee an awkward result should the transferee Court disagree with this Court's construction and find that the dispute is not within the License Agreement's scope or that the License Agreement is otherwise invalid. In that case (and without recourse), IPT will have lost the benefit of its chosen forum without a determination on the merits of the case. This is particularly troubling because the Court does not have the benefit of full discovery, a complete record and the parties' briefing on the factual issues surrounding the validity and applicability of the License Agreement. The License Agreement's validity and applicability, after all, are central issues in this case. Without the benefit of full discovery and a presentation of the admissible evidence, the Court must conduct a factual analysis concerning issues that might be case dispositive in theory, yet not be persuaded were the full record of the facts before it. This may prove to be an unwelcome result, but under those facts and the current precedents, the Court sees no alternative that could foreclose this possibility.

2 The Court does not need to resolve the question of whether this issue requires the application of Texas or New York

4

*Europe S.A. v. Franco Vago International, Inc.*, 756 F. Supp. 2d 369 (S.D.N.Y. 2010), which held that the defendant waived a forum-selection clause in a bill of lading contract when the defendant voluntarily and intentionally abandoned the enforcement of that right. *Id.* at 380. The Court reasoned that the defendant waived the clause because the defendant failed to assert the forum-selection clause during the first eleven months of the pending litigation, failed to mention the forum-selection clause in its answer despite acknowledging the bill of lading in which the forum-selection clause was contained, and availed itself of the plaintiff's forum by filing several affidavits, impleading third-party defendants, and filing several memorandum of law before asserting the existence of the forum-selection clause. *Id.* at 380.

In this Court, IPT alleges that the Canon entities have waived the forum-selection clause because the entities waited eight months to assert the forum-selection clause, failed to mention the forum-selection clause in their Answer despite acknowledging the License Agreement in which the forum-selection clause is contained, and availed themselves of this forum by filing several affidavits and counterclaims. However, the Court is not persuaded that this rises to the level of waiver.

First, *Franco Vago* is easily distinguishable because unlike the defendant there, which never "claim[ed] that [the] court was the wrong place to litigate under some other rubric," *id.* at 380, the Canon entities did assert that the Eastern District of Texas was the wrong place to litigate. The Court in *Franco Vago* reasoned that a finding of waiver was appropriate because the plaintiff and the Court were never put on notice that the defendant intended to seek transfer. *Id.* at 380. In the present case, the Canon entities put the Court and IPT on notice in its Answer to IPT's Complaint under its sixth affirmative defense. Dkt. No. 33 at 14 (Def.'s Answer to Pl.'s Am. Compl.). There, the Canon entities specifically challenged the venue of this Court as both

---

law. That question was not briefed by the parties. Under either State's law, the same result is reached.

improper and inconvenient. *Id.* This properly put the parties and the Court on such notice, which leads to the conclusion that there is no waiver.[3]

Second, IPT alleges that the Canon entities pled three declaratory judgment counterclaims, affirmatively alleging that venue here was proper for their counterclaims. This statement is simply not the accurate or complete. The Canon entities do affirmatively state that venue is proper for their counterclaims, **but** they also plainly state in their counterclaims that "Defendants do not waive any challenges to venue as to the claims that IPT has asserted against Defendants, and . . . Defendants do not waive any challenges to or otherwise concede the convenience of the present forum." Dkt. No. 33 at 19. The Court finds no waiver under this circumstance.

Third, the License Agreement contains an explicit non-waiver clause. L.A. § 8.07. That clause states that the "failure of either Party to insist upon the strict performance of any provision hereof or to exercise any right or remedy shall not be deemed a waiver of any right or remedy with respect to any existing or subsequent breach or default." *Id.* As a result, the Canon entities' affirmative statement that venue is proper (even without the explicit reservation noted above) would not necessarily and automatically waive the right, under the License Agreement, to raise the

---

3 Defendants also cite to *LPR, SRL v. Challenger Overseas, LLC.*, 2000 WL 973748 (S.D.N.Y. July 13, 2000) to support their argument of waiver. In that case, unlike the present case, the defendants did not assert improper forum in their Answer. *Id.* at *6. Suggesting that this may constitute waiver, the Court then analyzed whether the plaintiff was on *notice* that forum was an issue. *Id.* Reasoning that because the plaintiff was an actual party to the contract containing the mandatory forum-selection clause, the Court concluded that "the plaintiff plainly had sufficient notice that the forum for this dispute lies" outside the current forum. *Id.* Therefore this case does not support IPT's position because this Court concludes the parties and the Court were put on notice by the Canon entities' Answer.

Texas law also focuses on notice, and the case IPT cites for support is no longer applicable to the facts of this dispute. The case, *Williamson-Dickie Mfg. Co. v. M/V Heinright J*, 762 F. Supp. 2d 1023 (S.D. Tex. 2011), applies the pre-*Atlantic Marine* standards to a motion to transfer venue. In that case, the Defendant moved for transfer pursuant to the forum-selection clause under Rule 12(b)(3), and the Court held that the forum-selection clause was waived under 12(b)(3) because it was not *plead with specificity* in the first responsive pleading. *See* Fed. R. Civ. P. 12(g)–(h) ("A party waives any defense listed in Rule 12(b)(2)–(5) by" failing to include it in the first responsive pleading). The seminal case of *Atlantic Marine*, however, instructed defendants to move for transfer pursuant to a forum-selection clause under 28 U.S.C. § 1404(a), which unlike a Rule 12(b)(2)–(5) motion, is not required to be plead with specificity in a first responsive pleading. Therefore this case does not support waiver as IPT would have the Court believe.

forum-selection clause as a valid defense to venue. For the above reasons, the Court finds that the Canon entities have not waived the forum-selection clause.

### b. *Applicability of the License Agreement to the facts*

The Court next turns to whether the facts of this case fall within the scope of the License Agreement. IPT argues that the particular dispute before the Court is outside the scope of the License Agreement for two reasons.

First, IPT argues that the forum-selection clause is not applicable because the License Agreement was raised as an affirmative defense. This argument is without merit. Litigants routinely raise contracts between the parties as defenses to otherwise non-contractual claims. For example, in *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991), a passenger on a cruise line sustained injuries after a slip and fall. *Id.* at 588. After being sued in tort, the cruise line raised the contract contained on the back of a passenger's ticket as an affirmative defense and requested summary judgment on the basis of the forum-selection clause. *Id.* The Supreme Court concluded that the Court of Appeals erred in not enforcing the forum-selection clause. *Id.* at 595. Accordingly, invoking a contract as a defense does not *ipso facto* change the scope of the underlying dispute as to place it either within or beyond the scope of the contract.

Second, IPT argues that because the License Agreement was terminated by the actions of Canon, Inc., the License Agreement is inapplicable to the facts of this patent infringement suit.

Under the Licensing Agreement, if Canon, Inc. or one of its affiliates aids a third party to contest the validity of any of the patents, then the License Agreement could be terminated. L.A. § 7.03(c). IPT alleges that after filing this suit, it discovered a "previously obscured" relationship between Canon, Inc. and a "major competitor." Through this "obscured" relationship, IPT alleges that Canon, Inc. aided a major competitor to challenge the validity of the licensed patents

7

under the Agreement. IPT further alleges that Canon, Inc. instituted an *ex parte* re-examination proceeding at the USPTO, which also allegedly violates the Agreement. After this suit was filed, IPT caused Tesseron to send a letter to Canon, Inc., notifying Canon, Inc. that Tesseron terminated the licensing agreement. Dkt. No. 36 Ex. 2. The Canon entities do not address these allegations in their Reply.

This type of situation raises a uniquely factual issue that would generally be resolved by the finder of fact. Fortunately, the Court is not burdened with deciding ultimate factual issues at this stage because the issue can be resolved by reference to the License Agreement. Section 7.07 of the License Agreement explicitly states that the forum-selection clause "shall survive the expiration or termination of this Agreement." L.A. § 7.07. The License Agreement contemplates this situation. While Tesseron terminated the license under § 7.03 of the License Agreement, § 7.07 dictates that the forum-selection clause survives such termination. As a result, IPT has not persuaded the Court that the facts of this dispute fall outside the scope of the License Agreement due to the termination of the license itself.

The Court notes that the result it reaches is unique to the current case. Here, IPT both *opposed* the forum-selection clause and raised the termination dispute—a dispute that calls into question the very essence of the contract. By raising the termination dispute, IPT put the facts of the dispute squarely within the scope of the License Agreement. However, unless the contract is fully engaged and at the very core of the dispute, the Court will not likely conclude that the facts fall within the scope of the contract. This is especially true if the Court perceives that the party who *asserts* the forum-selection clause attempts to manufacture a contract dispute simply as a means to import the forum-selection clause into the case for venue purposes. The Court will look with serious skepticism on parties that assert the forum-selection clause of an (otherwise ancillary)

contract when the real dispute is clearly not wedded to the contract containing the forum-selection clause.

### c. *Validity of the License Agreement as applied to IPT*

IPT next argues that because IPT is not a signatory on the contract, IPT cannot be bound by the forum-selection clause. As IPT notes, it was not a party to the License Agreement and therefore did not directly engage in the bargaining process that resulted in the adoption of the forum-selection clause. However, the explicit terms of the Licensing Agreement state that the Agreement "shall be binding upon and inure to the benefit of Tesseron, Canon, and their respective successors and permitted assigns." L.A. § 8.01. In IPT's opposition to the present motion, IPT stated that "IPT's predecessor in interest [is] Tesseron."[4] Dkt. No. 39 at 4. The Court finds that by IPT's own admissions it is a successor in interest to Tesseron and is bound by the terms of the bargained-for exchange between Tesseron and Canon, Inc., including those provisions that speak to forum selection.

### d. *Validity of the forum-selection clause*

IPT argues that the forum-selection clause is invalid because it is grammatically illogical and facially meaningless. "In interpreting a contract under New York law, words and phrases should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (internal quotations omitted).

The forum-selection clause at issue states that "*either* party hereby submits" to the exclusive jurisdiction of the Southern District of New York. *See* L.A. § 8.12 (emphasis added). IPT suggests that the word "either" can only refer to the one and the other of two options, meaning

---

4 Although the Court thinks it obvious, a "successor" is defined "as one who replaces or follows a predecessor." Black's Law Dictionary 2009. Thus, IPT is a successor in interest by its own admission.

9

that the "other" party in this disjunctive phrase—IPT—cannot be compelled to submit to jurisdiction in S.D.N.Y. IPT admits that this reading renders the forum-selection clause meaningless. Dkt. No. 39 at 6. The law does not favor a meaningless construction, and this Court will not construe the clause in such a manner. *LaSalle Bank Nat. Ass'n*, 424 F.3d at 206. The Court finds the forum-selection clause is not rendered invalid or meaningless by IPT's arguments.

### B. The *Atlantic Marine* Analysis

#### i. *Applicable law*

Having answered the threshold questions and finding that the *Atlantic Marine* framework controls this situation, the Court now applies that framework. "The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 581 (2013). "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* "Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." *Id.* at 582. "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* at 582.

#### ii. *Discussion*

IPT has not met its burden of establishing that transfer to the forum for which the parties bargained is unwarranted. *Id.* Under three of the four public interest factors—the only type of

factors considered under *Atlantic Marine*—IPT concludes that they are "neutral." Dkt. No. 39 at 12–15. IPT does argue that this Court has more familiarity with the governing law. *Id.* at 14. Obviously, federal courts in New York can aptly apply federal patent law. When coupled with the fact that the License Agreement itself is governed by New York substantive law (L.A. § 8.11) this Court is not persuaded that New York would be less familiar with the law governing this dispute. As a result, this factor is neutral. This Court finds that IPT has not carried its burden under *Atlantic Marine*.

### C. Applicability of the Forum-Selection Clause to CSA

As discussed previously, C-USA and CSA are categorized differently under the License Agreement. Therefore the above analysis of the forum-selection clause applies most directly to C-USA, the licensed affiliate of Canon, Inc. under the License Agreement. Given this Court's conclusions with respect to C-USA, the Court believes that it would defy all notions of judicial economy to transfer C-USA per the forum-selection clause while simultaneously retaining CSA as a party in the Eastern District of Texas under a traditional § 1404(a) analysis (i.e., as a party that cannot assert the forum-selection clause). The Court will not be persuaded to ignore the benefits of such clear judicial economy. However, the Court again notes that its conclusion here is a narrow one and is limited to the precise relationship between the particular parties in this case.

## CONCLUSION

Under the framework set forth in *Atlantic Marine*, the Canon entities have shown that transfer is warranted and IPT has not met its burden of establishing that transfer to the forum for which the parties bargained is unwarranted. Accordingly, the Canon entities' Motion to Transfer Venue (Dkt. No. 36) is **GRANTED**.

11

It is **ORDERED** that both Canon U.S.A., Inc. and Canon Solutions America, Inc., be transferred to the United States District Court for the Southern District of New York. The clerk shall forthwith take all steps necessary to effectuate this transfer.

**So ORDERED and SIGNED this 19th day of December, 2014.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE